THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEREMY FOWLER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC MARITIME ASSOCIATION; SSA TERMINALS, LLC; and SSA CONVENTIONAL, INC., individually and on behalf of others similarly situated;<br><br>Defendants. | No. 2:24-cv-00974-TL<br><br>AMENDED CLASS ACTION COMPLAINT |

**INTRODUCTION**

Washington state and municipal law requires employers to provide paid sick leave to employees. Despite these requirements, Defendants Pacific Maritime Association ("PMA"), SSA Terminals, LLC ("SSA Terminals") and SSA Conventional, Inc. f/k/a SSA Pacific Inc. ("SSA Conventional") (collectively, "SSA Defendants"), and other similarly situated entities, failed to do so. Plaintiff Jeremy Fowler brings this case, individually, and on behalf of other similarly situated workers, against Defendants for violations of Washington's Paid Sick Leave

law, RCW 49.46.210, Seattle's Paid Sick and Safe Time Ordinance, SMC 14.16 ("PSST"), and Washington's Wage Rebate Act, RCW 49.52, *et seq*.

## I. PARTIES AND JURISDICTION

1.1    Plaintiff Jeremy Fowler is an individual residing in King County, Washington. Mr. Fowler has been employed as a longshore worker in Washington state for nearly 20 years.

1.2    Defendant PMA is a California corporation with its principal place of business in San Francisco, California. PMA does business in Washington, including in King County.

1.3    PMA is an "employer" within the meaning of RCW 49.46.010 and SMC 14.16.010.

1.4    SSA Terminals is a Washington corporation with its principal place of business in Seattle, Washington. SSA Terminals operates marine terminals throughout the State, including in the city of Seattle.

1.5    SSA Terminals is an "employer" within the meaning of RCW 49.46.010 and SMC 14.16.010.

1.6    SSA Conventional is a Washington corporation with its principal place of business in Seattle, Washington. SSA Conventional operates marine terminals throughout the State, including in the city of Seattle.

1.7    SSA Conventional is an "employer" within the meaning of RCW 49.46.010 and SMC 14.16.010.

1.8    Jurisdiction is proper over Defendants as Defendants transact business in King County, Washington.

1.9     Venue is proper under RCW 4.12.020(3) because some of the events giving rise to this action occurred in King County, Washington and under RCW 4.12.025(1) because Defendants have done and continue to do business in King County, Washington.

## II.    FACTS

2.1     Defendant Pacific Maritime Association (PMA) is a multi-employer association of steamship lines, stevedoring companies, and marine terminal operators on the West Coast of the United States.

2.2     PMA and certain of its members, including SSA Defendants, do business in the State of Washington, including within the geographic boundaries of the City of Seattle.

2.3     Among other services provided to its members, PMA coordinates the hiring and dispatch of labor, payroll and benefits administration, and safety training of employees who work on PMA member jobsites.

2.4     PMA also serves as the members' agent and representative in negotiations with the International Longshore and Warehouse Union (ILWU or "the Union") over wages and working conditions for hourly-paid non-exempt positions, including: longshore, clerk, container freight station longshore/clerk utilitymen, walking boss/foreman, and similar positions ("Longshore Workers") who work on PMA member jobsites.

2.5     PMA jointly employed Mr. Fowler and Longshore Workers.

2.6     During the class period, PMA assigned Mr. Fowler and other Longshore Workers to PMA member jobsites in Washington from "dispatching halls" it jointly operates with the Union.

2.7     In a given year, Mr. Fowler may be dispatched to work on a half-dozen or more different jobsites.

2.8     During the class period, a significant portion of Mr. Fowler's hours were logged working at SSA Defendants' jobsites located within the geographic boundaries of the City of Seattle.

2.9     PMA prepared payroll and issued payment to Mr. Fowler and Longshore Workers for labor performed at member jobsites, including with SSA Defendants' jobsites.

2.10    At no time during the class period did Mr. Fowler's pay stubs show any balance of accrued sick leave, despite him being regularly engaged in full-time work.

2.11    At no time during the class period did Mr. Fowler have the benefit or use of paid sick leave. As a result, Mr. Fowler either worked sick when he should have had the benefit of staying home, or stayed home and went without pay when he was sick or had a doctor's appointment.

2.12    Defendants failed to provide paid sick leave; failed to calculate sick leave accruals based on hours worked; and failed to provide Mr. Fowler and Longshore Workers with notice of rights under state law and/or the PSST, including but not limited to notice regarding the amount of paid sick leave available, the right to be protected from retaliation, the rate of accrual, the purposes for which paid sick leave may be used, and the procedure for requesting such leave.

2.13    By failing to comply with State and municipal sick leave laws, Defendants acted willfully and with the intent to deprive Longshore Workers of their wages.

### III.    PLAINTIFF CLASS ALLEGATIONS

3.1     Plaintiff Jeremy Fowler files this lawsuit on behalf of himself and similarly situated employees and former employees, defined as follows:

> **Longshore Class**. All hourly-paid non-exempt longshore, clerk, container freight station longshore/clerk utilitymen, walking boss/foreman, and similar

positions ("Longshore Workers") employed on PMA member jobsites located in the State of Washinton at any time during the three years preceding the filing of this Complaint and thereafter (the "class period").

**Longshore (Seattle) Subclass**. All Longshore Workers employed on PMA member jobsites located within the geographic boundaries of the City of Seattle at any time during the class period.

3.2    Such Class and Subclass (together, the "Longshore Classes") are subject to certification under Civil Rules (CR) 23(a), 23(b)(2), and 23(b)(3).

3.3    **Numerosity**: The Longshore Classes are so numerous that joinder of all individual members is impracticable, as required by CR 23(a)(1). On information and belief, both the Class and Subclass number over 100 workers.

3.4    **Commonality and Predominance**: There are questions of law and fact common to the Longshore Classes that predominate over questions that affect individual members. These include, but are not limited to: whether Defendants must comply with state and/or municipal sick leave laws; whether Defendants in fact complied with state and/or municipal sick leave laws; whether Defendants kept true and accurate records of all sick leave accrued by class members; whether PMA is a joint employer; whether Defendants provided notice to class members of their right to paid sick leave; and whether Defendants acted willfully and with intent to deprive class members of their wages.

3.5    **Typicality**: Plaintiff's claims are typical of the Longshore Classes because they arise out of and are caused by Defendants' common course of conduct.

3.6    **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Longshore Classes. He shares the same interests as all members of the class and has retained competent counsel experienced in class action litigation.

3.7     **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class action treatment will allow similarly situated workers to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Class litigation will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices. Finally, the harm suffered by each individual Longshore Workers is likely relatively small compared to the burden and expense of prosecuting individual actions. Absent a class action, it would be difficult, if not impossible, for such workers to obtain effective relief.

3.8     **Injunctive Relief**: Defendants have acted or refused to act on grounds generally applicable to the Longshore Classes, including by uniformly failing to provide and accrue paid sick leave in violation of state and local laws, as well as failing to provide notice of paid sick leave rights, such that final injunctive relief is appropriate.

## IV.   DEFENDANT CLASS ALLEGATIONS

4.1     On information and belief, the allegations described above with respect to the named Defendants' failure to provide paid sick leave to the Longshore Classes apply with equal force to the other PMA members operating in the City of Seattle and/or the State of Washington.

4.2     As a result, Plaintiff seeks to certify a class of defendants as follows:

**Defendant Class.** All PMA members who employ or have employed one or more members of the Longshore Classes in the City of Seattle and/or the State of Washington (the "Defendant Class") during the class period.

4.3     On information and belief, the Defendant Class is comprised of at least 20 PMA members.

4.4     Defendant PMA should be appointed to represent the interests of the Defendant Class because, as described above, it already represents the interests of its members with respect

to the wages and working conditions of Longshore Workers and it prepares payroll and issues payment to such workers, based on a common policy and practice.

4.5 SSA Defendants should also be appointed to represent the interest of the Defendant Class because they are PMA members, they operate terminals throughout Washington, and because they are significant employers of Mr. Fowler and members of the Longshore Class and Longshore (Seattle) Subclass.

4.6 The claims against the Defendant Class are properly maintained as a class action under Civil Rules 23(a), 23(b)(1), and 23(b)(3).

4.7 **Numerosity**: The Defendant Class described above is so numerous that joinder of all individual members is impracticable, as required by CR 23(a)(1).

4.8 **Commonality and Predominance**: There are questions of law and fact common to the Defendant Class that predominate over any questions that may affect individual members. These include, but are not limited to: whether the Defendant Class must comply with state and/or municipal sick leave laws; whether the Defendant Class in fact complied with state and/or municipal sick leave laws; whether the Defendant Class kept true and accurate records of all sick leave accrued by class members; whether Defendant Class is a joint employer of members of the Longshore Classes; whether Defendant Class provided notice to members of the Longshore Classes of their right to paid sick leave; and whether the Defendant Class acted willfully and with intent to deprive workers of their wages.

4.9 **Typicality**: The claims of the Longshore Classes against PMA and SSA Defendants and their anticipated defenses thereto are typical of the claims and defenses of the unnamed PMA members. Like PMA and SSA Defendants, each of the unnamed PMA members of the Defendant Class employed Longshore Workers and failed to provide those workers with

the benefit of paid sick leave. The class claims for injunctive relief and damages are the same as the Longshore Classes' claims against each unnamed member of the Defendant Class. The nature of the defenses that may be asserted by PMA and SSA Defendants also would be the same, as liability for the failure to provide sick leave or safe time does not depend on the individual circumstances of particular terminal operators.

4.10    **Adequacy of Representation**: PMA and SSA Defendants are adequate and appropriate representatives of the Defendant Class by virtue of their own defenses to the same claims. Because PMA and SSA Defendants have at least as much incentive to vigorously defend against the claims as any unnamed member, PMA and SSA Defendants and their counsel will fairly and adequately protect and represent the interests of the Defendant Class.

4.11    **Superiority**: Pursuing separate actions against each individual PMA member would be inefficient, costly for the parties, a waste of judicial resources, and would create a risk of inconsistent judgments with respect to individual members of both the Plaintiff and Defendant Classes. Moreover, an adjudication with respect to individual members of the Defendant Class would, as a practical matter, be dispositive of the interests of the unnamed members by establishing their liability for providing sick leave in compliance with state and municipal law. Class action treatment will allow Plaintiff's claims to proceed without wrangling dozens of unnamed members into duplicative lawsuits involving identical claims.

4.12    **Injunctive Relief**: PMA, SSA Defendants, and PMA's other member companies have acted or refused to act on grounds generally applicable to the Longshore Workers, including by uniformly failing to provide and accrue paid sick leave in violation of state and local laws, as well as failing to provide notice of paid sick leave rights, such that final injunctive relief applicable to the entire Defendant Class is appropriate.

## V.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### RCW 49.46.210

5.1   Plaintiff restates and realleges the allegations set forth above.

5.2   Defendants' failure to provide paid sick leave to members of the Longshore Class constitutes a violation of RCW 49.46.210. Plaintiff seeks final declaratory and injunctive relief for such violations against Defendants and the Defendant Class, including but not limited to instatement of the paid sick leave balances that should have accrued during the class period.

5.3   Plaintiff and members of the Longshore Class also have suffered financial damages and lost wages as a result of Defendants' and the Defendant Class's acts and omissions, in amounts as will be proven at trial.

### SECOND CAUSE OF ACTION
### Seattle Municipal Code 14.16

5.4   Plaintiff restates and realleges the allegations set forth above.

5.5   Defendants' failure to provide additional paid sick leave accruals to all members of the Longshore Seattle Subclass who performed work within the geographic boundaries of the City of Seattle constitutes a violation of SMC 14.16. Plaintiff seeks final declaratory and injunctive relief for such violations against Defendants and the Defendant Class, including but not limited to instatement of the paid sick leave balances that should have accrued during the class period.

5.6   Plaintiff and members of the Longshore Seattle Subclass also have suffered financial damages and lost wages as a result of Defendants' and the Defendant Class's acts and omissions, in amounts as will be proven at trial.

## THIRD CAUSE OF ACTION
**Wage Rebate Act, RCW 49.52**

5.7   Plaintiff restates and realleges the allegations set forth above.

5.8   By the foregoing, Defendants' actions constitute willful withholding of wages in violation of RCW 49.52.050 and .070.

5.9   As a result of Defendants' acts and omissions, Defendants and the Defendant Class are liable to members of the Longshore Classes for twice the amount of wages withheld in amounts as will be proven at trial.

### VI.   PRAYER FOR RELIEF

For himself and on behalf of all persons similarly situated, Plaintiff Jeremy Fowler prays for the following relief:

a. Certification of the Longshore Class, Longshore (Seattle) Subclass, and Defendant Class pursuant to CR 23.

b. Injunctive and declaratory relief as follows:

   i. An injunction declaring Defendants and the Defendant Class violated RCW 49.26.210, SMC 14.16, and RCW 49.52.050 by failing to accrue and provide paid sick leave;

   ii. An injunction that requires Defendants and the Defendant Class to adopt a paid sick leave policy that complies with state and municipal law;

   iii. An injunction that requires Defendants and the Defendant Class to provide paid sick leave in compliance with state and municipal law;

   iv. An injunction that requires Defendants and the Defendant Class to comply with the notice and posting requirements of state and municipal law;

   v. Instatement of the paid sick leave balances that should have accrued to Plaintiff and members of the Longshore Classes during the class period.

c. Actual damages;

d. Disgorgement of wages Defendants and the Defendant Class unlawfully retained that should have been paid to members of the Longshore Classes as paid sick leave;

e. Statutory damages, including exemplary and/or liquidated damages, equal to double the amounts due to class members, pursuant to SMC 14.16.110(A) and RCW 49.52.070;

f. Prejudgment interest;

g. Attorneys' fees and costs;

h. Such other relief as the Court deems just and proper.

DATED this 26th day of February, 2025.

SCHROETER GOLDMARK & BENDER

 s/ Lindsay L. Halm
LINDSAY L. HALM, WSBA #37141
HONG (CHEN-CHEN) JIANG, WSBA #51914
ANDREW D. BOES, WSBA #58508
ADAM J. BERGER, WSBA #20714
401 Union Street, Suite 3400
Seattle, WA  98101
Phone:  (206) 622-8000
Fax:  (206) 682-2305
halm@sgb-law.com
jiang@sgb-law.com
boes@sgb-law.com
berger@sgb-law.com

*Counsel for Plaintiff*