The Honorable Tana Lin

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JEREMY FOWLER, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC MARITIME ASSOCIATION, SSA TERMINALS, LLC; and SSA CONVENTIONAL, INC., individually and on behalf of other similarly situated,<br><br>Defendants. | Case No. 2:24-cv-00974-TL<br><br>DEFENDANTS' RESPONSE TO SUPPLEMENTAL DECLARATION OF LINDSAY L. HALM IN SUPPORT OF CLASS CERTIFICATION |

DEFS' RESPONSE TO SUPPL. DECL.
[NO. 2:24-CV-00974-TL] -

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Court heard Plaintiff's Motion for Class Certification (the "Motion") on May 7, 2026. Plaintiff was physically present at the hearing. *See* Supplemental Declaration of Jesse Miller, ¶ 2, Exh. N (Hearing Transcript) at 22:21–22. On June 4, 2026, Plaintiff filed the Supplemental Declaration of Lindsay L. Halm in Support of Class Certification (the "Supplemental Declaration"). *See* ECF No. 63. On June 5, 2026, Defendants filed an objection to that declaration, which included a request for leave to respond, *see* ECF No. 64, and which the Court granted. *See* ECF No. 65.

The Supplemental Declaration attaches as Exhibit 21 Plaintiff's paystub for the pay period ending May 8, 2026. *See* ECF No. 63-1. Without explanation or analysis, it asserts that the paystub "bears directly on the elements of numerosity and superiority related to the proposed Defendant Class." *See* ECF No. 63, ¶ 1. It notes that the paystub reflects that Plaintiff first worked for Metro Cruise Services, LLC on May 7, 2026. *See id.* It then says that PMA did not disclose Metro Cruise in discovery, citing PMA's April 18, 2025 supplemental interrogatory response, and that Metro Cruise is a PMA member, citing PMA's 2024 Annual Report. *See id.*

In fact, Metro Cruise did not begin employing any dockworkers in Washington until ten months after PMA's supplemental interrogatory response, in February 2026, after winning a five-year lease to provide stevedoring and terminal services at the Port of Seattle's Pier 91 cruise terminal. *See* Declaration of Scott Rettig ("Rettig Decl."), ¶ 3; Request for Judicial Notice, Exh. O. As Plaintiff acknowledges, the first time he worked for Metro Cruise was May 7, 2026. *See* ECF No. 63, ¶ 1; Rettig Decl., ¶ 3.

## II.  ARGUMENT

The Supplemental Declaration and Exhibit 21 only reinforce Defendants' showing that Plaintiff's proposed plaintiff classes are uncertifiable.

DEFS' RESPONSE TO SUPPL. DECL.
[NO. 2:24-CV-00974-TL] - 1

**A.      Defendants did not omit Metro Cruise.**

Plaintiff's innuendo that Metro Cruise "was also not disclosed by Defendant PMA" in its April 2025 supplemental interrogatory response identifying putative defendant class members is unfounded. PMA could not disclose Metro Cruise in April 2025 as it did not begin employing longshore workers in Washington until February 2026—ten months after PMA served its supplemental response—and, as Plaintiff concedes, he did not work for Metro Cruise until May 7, 2026. *See* Rettig Decl., ¶ 3. The Supplemental Declaration does not establish any discovery deficiency, let alone one that could support class certification.

**B.      The Supplemental Declaration confirms Plaintiff can identify his employers without resort to a defendant class.**

The Supplemental Declaration also defeats any claim that a defendant class is necessary to identify the proper parties. The new paystub identifies Metro Cruise as Plaintiff's employer for the relevant May 7, 2026 shift. Plaintiff's ability to pinpoint new employer Metro Cruise based on a single pay period underscores that he can identify each waterfront entity that employed him and when. This defeats any suggestion that a defendant class is necessary to address supposed ambiguity regarding employer identities, which is not a valid basis to certify a defendant class in the first place.

**C.      One additional entity does not establish numerosity.**

Plaintiff appears to offer the Metro Cruise paystub to suggest that the population of potential defendants is larger than previously understood at the time he filed his class certification motion. Again, not so, as Metro Cruise did not employ dockworkers then. But even accepting Plaintiff's premise, the addition of a single, recently arrived employer does not move the needle. Plaintiff still has not demonstrated that joining the actually relevant employers—those for whom he worked during the limitations period—is impracticable. Defendants have shown multiple other litigations against PMA and member companies where the plaintiffs have

DEFS' RESPONSE TO SUPPL. DECL.
[NO. 2:24-CV-00974-TL] - 2

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

joined dozens of defendants in each. *See* ECF No. 48-14, Exh. L. The Supplemental Declaration does nothing to cure the numerosity deficiencies identified in Defendants' opposition.

### D. The Supplemental Declaration does not solve the opt-out problem.

In addition, including Metro Cruise among the putative defendant class members does not change the fact that were a defendant class certified, members can and likely will opt out, defeating numerosity and superiority.

### E. The Supplemental Declaration demonstrates the individualized issues that defeat Plaintiff's damages class.

Finally, the paystub attached as Exhibit 21 further demonstrates some of the key reasons why the proposed *plaintiff* classes cannot be certified. The paystub shows that Metro Cruise paid Plaintiff for working twelve hours on the first shift, which begins at 8:00 a.m., *see* ECF No. 48-3 at 26, § 2.41, on May 7, 2026. But Plaintiff was physically present at the 2:00 p.m. court hearing that same day, showing he did not work the entire shift for which he was paid.

This discrepancy illustrates the very problem Defendants earlier identified: liability and damages cannot be determined through common proof, but instead would require individualized, shift-by-shift inquiries into when each employee actually worked, for which company, and how that time compares to the compensation paid. *See* ECF No. 48 at 23:14–24:5. Such fact-intensive determinations defeat predominance and render class treatment inappropriate.

Further, the paystub shows Plaintiff received 9.27 hours of guarantee pay—compensation for hours not worked—that week. As Defendants have explained, a claim for sick pay during that week would necessarily require an individualized offset analysis against the guarantee pay received. *See* ECF No. 48 at 22:13–18. This type of week-by-week, worker-specific calculation further underscores the need for individualized inquiries that preclude class certification.

Rather than supporting certification, the Supplemental Declaration in fact demonstrates concrete examples of the types of individualized issues that predominate.

Respectfully submitted this 12th day of June, 2026.

DEFS' RESPONSE TO SUPPL. DECL.
[NO. 2:24-CV-00974-TL] - 3

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

SEYFARTH SHAW LLP


By:  /s/ Jesse L. Miller
Jesse L. Miller, *Pro Hac Vice*
Taylor D. Horn, *Pro Hac Vice*
560 Mission Street, Suite 3100
San Francisco, California 94105
Email: jmiller@seyfarth.com
        thorn@seyfarth.com

Kyle D. Nelson, WSBA No. 49981
999 Third Avenue, Suite 4700
Seattle, Washington 98104
Email: knelson@seyfarth.com


*Attorneys for Defendants Pacific Maritime Association, SSA Terminals, LLC, and SSA Conventional, Inc.*

DEFS' RESPONSE TO SUPPL. DECL.
[NO. 2:24-CV-00974-TL] - 4