

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEREMY FOWLER,<br><br>          Plaintiff,<br><br>    v.<br><br>PACIFIC MARITIME ASSOCIATION ET AL,<br><br>          Defendants. | CASE NO. 2:24-cv-00974-TL<br><br>ORDER ON MOTION TO CERTIFY CLASS |

This matter is before the Court on Plaintiff Jeremy Fowler's Motion to Certify Class. Dkt. No. 41. Defendants are Pacific Maritime Association; SSA Terminals, LLC; and SSA Conventional, Inc. (collectively "Defendants"). Having considered Defendants' opposition (Dkt. No. 48), Plaintiff's reply (Dkt. No. 53), the relevant record, and having held oral argument (*see* Dkt. No. 59), the Court GRANTS Plaintiff's motion.

//

//

//

ORDER ON MOTION TO CERTIFY CLASS – 1

## I.    BACKGROUND

### A.    Issues Raised

Plaintiff brings two[1] causes of action, asserting that: (1) Defendants failed to provide paid sick leave to members of the Class, in violation of RCW 49.46.210; and (2) Defendants' failure to provide sick leave constitutes willful withholding of wages, in violation of RCW 49.52.050 and .070. Dkt. No. 29 ¶¶ 5.2, 5.8. In the present motion, Plaintiff seeks to certify a Plaintiff Class of Dockworkers and a Defendant Class of Employers. Dkt. No. 41 at 2.

### B.    The Parties

#### 1.    Defendant Pacific Maritime Association ("PMA")

Defendant Pacific Maritime Association is a multi-employer organization that consists of "over 70 ocean carrier lines, stevedoring companies, and marine terminal operators with jobsites up and down the West Coast" (collectively, "PMA Members"). Dkt. No. 41 at 3; *see also* Dkt. No. 35 (Defendant PMA's Answer to Amended Complaint) at 4. Defendant PMA's "primary purpose is to negotiate, enter into, and administer, on behalf of its members, collective bargaining agreements ('CBAs')" with the International Longshore and Warehouse Union ("ILWU"). Dkt. No. 48 at 9. The ILWU represents West Coast dockworkers. *Id*. These agreements govern wages, benefits, and other terms and conditions of employment for marine clerks, longshoremen, foremen, and similar positions (collectively, "Dockworkers"). Dkt. No. 41 at 3. Dockworkers are employed on PMA Member jobsites. *Id*. Defendant PMA provides various services, including: administering labor agreements; collecting labor orders for the union dispatch process; providing human resource related services; managing the grievance process; maintaining Dockworkers' personnel files; and conducting safety training for Dockworkers. *Id*.

---

[1] Plaintiff only asserts alleged violations of the RCW in its motion (*see* Dkt. No. 41 at 10–12) and concedes in his reply that he has dropped his "Seattle-based Dockworkers" claim (Dkt. No. 53 at 8).

ORDER ON MOTION TO CERTIFY CLASS – 2

at 3–4. Defendant PMA does not, however, "own, lease, operate, or control any property where cargo is loaded, unloaded, or moved. Nor does it own or otherwise control the tools or equipment that dockworkers use while performing services for PMA's members." Dkt. No. 48 at 9–10 (citations omitted). When PMA Members need Dockworkers at jobsites, PMA Members submit orders to Defendant PMA the day before, and Defendant PMA then submits the orders to local union halls, where the Dockworkers report to be dispatched to jobs. Dkt. No. 41 at 4. Neither Defendant PMA nor PMA Members determine Dockworkers' work schedules or the days Dockworkers report to the union dispatch halls. Dkt. No. 48-1 (Bartelson Decl.) ¶ 9. In fact, the CBA prohibits PMA Members from being present in the dispatch hall during dispatch, because the contract only permits a single PMA representative to be present in order to observe and relay any potential issues back to PMA Members. *Id*. ¶ 11.

Defendant PMA plays a significant role in Dockworkers' payments. Specifically, Defendant PMA serves as the centralized payroll agent for PMA Members. Dkt. No. 41 at 4; *see also* Dkt. No. 35 at 6. As the centralized payroll agent, Defendant PMA "aggregates timecard information from every jobsite, calculates taxes on the gross earnings, invoices the Members for the amount of wages owed, and issues to Dockworkers a single paycheck . . . at the end of the pay period." Dkt. No. 41 at 4. The paychecks that Dockworkers receive even feature Defendant PMA's logo. *Id*. Further, Defendant PMA maintains payroll records for PMA Members and is responsible for issuing an IRS form W-2 to each Dockworker at the end of the year. *Id*. Defendant PMA does not, however, control Dockworkers' wages, nor does it "use its own assets to fund dockworkers' payroll or benefits." Dkt. No. 48-1 ¶ 14. However, Defendant PMA does admit to bearing responsibility to ensure that Dockworkers are paid on time and that Dockworkers receive their bargained-for benefits. Dkt. No. 41 at 4–5. Additionally, Defendant PMA "serves as the Members' 'power of attorney' for purposes of paying unemployment

ORDER ON MOTION TO CERTIFY CLASS – 3

insurance . . . ; and it acts as the Members' 'taxpayer agent' for purposes of withholding and paying payroll taxes." *Id*. at 5.

Defendant PMA's existence relies on PMA Members. For example, Defendant PMA's Board of Directors is a group of executives from PMA Members; directorships are allocated among sub-groups within the membership—e.g., domestic carriers, international carriers, and stevedores. *Id*.; *see also* Dkt. No. 42-1 (Bartelson Depo.) at 13. Board members are voted on by PMA Membership. Dkt. No. 41 at 5. Constituting the board from executives of PMA Members is important because it allows for a fair representation of any potential concerns of the PMA Members. *See* No. 42-1 at 13. In fact, the board's authority over Defendant PMA is expansive and includes: appointing and removing all officers, agents, and employees of the corporation; conducting, managing, and controlling the affairs and business of the corporation; approving and admitting membership; levying, assessing, and collecting or providing for the collection of dues or assessments; and transacting all affairs of the corporation. Dkt. No. 41 at 5–6; *see also* Dkt. No. 42-4 (PMA Bylaws) at 6. But Defendant PMA's relationship with PMA Members goes further than that—the board decides how much to charge PMA Members, and those "assessments" pay the salaries of Defendant PMA staff. Dkt. No. 41 at 6; *see also* Dkt. No. 42-1 at 21, 22. Further, the board and PMA Members decide who is allowed to join the membership and, thus, has access to the Dockworker labor pool. Dkt. No. 41 at 6. Ultimately, Defendant PMA and PMA Members are intricately intertwined.

### 2.     SSA Terminals and SSA Conventional ("SSA Defendants")

The SSA Defendants are members of Defendant PMA. As part of their membership, the SSA Defendants employ Dockworkers—one of whom was Plaintiff—at over a dozen jobsites in Washington. *Id*. at 8. Although the number of Dockworkers that the SSA Defendants employ on

a given day fluctuates, it can be as high as 180 at a single jobsite. Dkt. No. 42-2 (Patalano Depo.[2]) at 6.

### 3. Plaintiff Jeremy Fowler

Plaintiff has worked in the longshore industry for over 20 years. Dkt. No. 43 (Fowler Decl.) ¶ 1. His job experience within the industry is diverse—he has worked as a lasher, lineman, holdman, and, occasionally, as a clerk or foreman. *Id*. Like his fellow Dockworkers, his wages, benefits, and terms of employment are governed by the ILWU CBA. *Id*. He asserts that, in his 20 years in the industry, he has never received paid sick leave in exchange for the hours he has worked, nor have Defendants sent him "any notice or communication that [Plaintiff] had a right to paid sick leave under Washington state law nor any information about how [Plaintiff] could earn such a benefit." *Id*. ¶ 2. During the time period relevant to this case, Plaintiff worked for at least seven PMA Members. Dkt. No. 41 at 9. In 2023, he worked 1,267 regular hours and 759 overtime hours. *Id*.

## II.    LEGAL STANDARD

When a party seeks to litigate a claim as a class representative, it must satisfy the requirements of Federal Rule of Civil Procedure 23(a). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Under Rule 23(a),

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[2] Witness Adam Patalano's deposition was the Rule 30(b)(6) deposition of Defendant SSA Terminals. *See* Dkt. No. 42-2 at 2.

A party also must satisfy at least one category within Federal Rule of Civil Procedure 23(b). *Dukes*, 564 U.S. at 345. In this matter, Rule 23(b)(3) is the relevant sub-section at issue. Under this provision, a class action may be maintained if the court finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

To determine whether a party has met its burden with regard to class certification, the Court must conduct a "rigorous analysis." *Dukes*, 564 U.S. at 350–51. Although this analysis may "entail some overlap with the merits of the plaintiff's underlying claim[,]" the Court considers the merits only insofar as they overlap with the Rule 23 requirements. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980–81 (9th Cir. 2011) (quoting *Dukes*, 564 U.S. at 351). Ultimately, the decision to certify a class is within the Court's sound discretion. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).

### III.    DISCUSSION

#### A.    Plaintiff's Supplemental Declaration

As a preliminary matter, the Court will address the Supplemental Declaration (Dkt. No. 63) Plaintiff's counsel filed on June 4, 2026, and whether the Court will consider the contents of it and its attached exhibit. The Supplemental Declaration includes an assertion that Plaintiff worked for a new PMA Member, Metro Cruise Services, LLC, during his pay period ending on May 8, 2026. *Id.* ¶ 1. Attached to the declaration is a copy of Plaintiff's paystub, issued on May 15, 2026, which reflects a pay period of May 2, 2026, to May 8, 2026. *See* Dkt. No. 63-1 (Paystub). The declaration asserts that the paystub "bears directly on the elements of numerosity and superiority related to the proposed Defendant Class." Dkt. No. 63 ¶ 1.

On June 5, 2026, Defendants filed an objection to Plaintiff's Supplemental Declaration, asserting that it prejudices Defendants and that the "[t]he Federal Rules of Civil Procedure, the Local Civil Rules, and the Court's Standing Order do not permit a party to submit evidence in support of a motion after the motion has been fully briefed, heard, and taken under advisement." Dkt. No. 64 (Defendant's Objection to Supplemental Declaration) at 2. Defendants request that the Court strike the supplemental declaration, or, if the Court is going to consider it, allow Defendants to file a response. *Id.* The Court allowed Defendants to file a response and Plaintiff to file a reply. Dkt. No. 65 (Court Minute Order). The Court will consider the Supplemental Declaration and attached exhibits, along with the briefing that followed it. *See HDT Bio Corp. v. Emcure Pharms., Ltd.*, No. C22-0334, 2022 WL 3018239, at *2 (W.D. Wash. July 29, 2022) ("[W]hen new evidence or issues are raised on reply, courts have discretion to either strike the reply declarations and portions of the reply brief that present new material or consider the new material after affording the nonmoving party an opportunity to respond.").[3] However, the Court notes that the briefing that followed the Supplemental Declaration consisted of repackaged arguments from the Parties and only affected the Court's analysis related to the numerosity issue.[4]

**B.    Standing**

To begin, the Court must address whether Plaintiff has standing to bring claims against Defendants. "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact

---

[3] Although the new evidence is not included in a reply brief, Defendants assert (*See* Dkt. No. 64 at 2), and the Court agrees, that the analysis as to whether to consider it is similar to that of new evidence being presented along with a reply brief.

[4] For example, Plaintiff did not seek any term or sanction against Defendants for Plaintiff's discovery violation claims (*see* Dkt. No. 70 at 2–3); therefore, the Court will not make a discovery ruling and it need not address Defendants' request to take judicial notice of the Port of Seattle meeting minute notes, which Defendants used to support their response regarding discovery violation allegations (*see* Dkt. No. 66 at 3; Dkt. No. 69).

ORDER ON MOTION TO CERTIFY CLASS – 7

that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). In a class action suit, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) (citation modified).

The only prong that is contested by the Parties is whether Plaintiff has suffered injury from all the Defendant class members. *See* Dkt. No. 48 at 19, Dkt. No. 53 at 12. The Court finds that Plaintiff has made a showing that he has standing to sue the Defendants in this matter. Plaintiff allegedly suffered actual injury from the seven Defendants he worked for since May 29, 2019 (the beginning of the proposed class period), by not receiving paid sick leave. Dkt. No. 43 ¶ 2. Additionally, he faces imminent injury from the Defendants he has not yet worked for because he could be dispatched to work for any one of them—who would also not provide him paid sick leave—as soon as tomorrow. *See* Dkt. No. 53 at 11; *see also* Dkt. No. 48-1 ¶ 9 (declaring that Defendant PMA and PMA Members do not determine dockworkers' schedules, that most jobs last for only one shift, and that the next job may be for a different PMA member). The structure of Dockworkers' shift assignments supports this imminent injury because, in order to get work shifts, Dockworkers visit the dispatch hall, where dispatchers assign whichever jobs are available that day to the workers who accept the jobs. Dkt. No. 48-1 ¶ 7. Although Defendants argue that Plaintiff has a choice regarding for whom he wants to work (Dkt. No. 48

//

//

//

at 8), there is no evidence in the record that he ever declined to work for any PMA member.[5] Also, this argument ignores the reality that when Plaintiff arrives at the dispatch hall, he is offered a variety of available jobs and must accept jobs that match his skillset—regardless of for which company—so that he can support himself and his family. *See* Dkt. No. 54-3 (Fowler Depo.) at 6. Further, although Plaintiff can choose for whom he works, he can neither choose nor control which PMA Members will offer him work for the day. Dkt. No. 48-1 ¶¶ 7–8. Defendant argued at oral argument that Plaintiff's conception of imminence here "conflates" the requirement of actual injury with a possibility down the road that Plaintiff may work for another PMA Member (Dkt. No. 62 at 53:2–5). But not only does that framing of Plaintiff's position *concede* that Plaintiff could work for a new Defendant in the future, it also completely ignores the structure of the Dockworkers' dispatch-based work, as well as controlling case law. *See TransUnion LLC*, 594 U.S. at 423 (standing is shown with "an injury in fact that is concrete, particularized, and actual *or imminent*" (emphasis added)).

Defendants also argue that *Martinez v. Newsom* supports their argument that Plaintiff cannot sue Defendants for whom he never worked. But in *Martinez*, the court held that Plaintiffs lacked standing to sue schools they were not enrolled in. *See* 46 F.4th at 971–72. This is inapposite here, because none of the *Martinez* plaintiffs could conceivably make the argument that on any given day, they could (or would pull their children to) enroll in a different defendant school. Here, in contrast, Plaintiff can conceivably work for a new Defendant as soon as tomorrow.

---

[5] At oral argument, Defendants tried to suggest that Plaintiff had only worked for seven Defendants over his 20-year career, but when questioned by the Court, Defendants had to limit the scope of their assertion to the class period only. *See* Dkt. No. 62 (Tr. of Motion Hr'g) at 52:18–53:1. In addition, Plaintiff was deposed by Defendants, and Defendants cited portions of his deposition in their opposition brief. *See e.g.*, Dkt. No. 48 at 27. If Defendants had evidence that Plaintiff had chosen not to work for any specific employer, they surely would have pointed that out to the Court.

Next, Plaintiff has shown that the alleged injury was caused by Defendants, as Defendants are the ones who did not provide Plaintiff paid sick leave. Dkt. No. 41 at 10. Lastly, Plaintiff has shown that the injury would be redressed by judicial relief, because should he succeed in his claim that Defendants' failure to provide paid sick leave is a wage violation under Washington law, he could be awarded damages, including backpay. *Id.* at 11 (citing *Moore v. Health Care Auth.*, 181 Wn.2d 299, 311, 332 P.3d 461 (2014) ("[F]ailure to pay health benefits as a failure to pay wages (and measuring damages as the value of those lost wages) is well grounded in the law.").

Accordingly, The Court finds Plaintiff has standing to bring claims against all Defendant class members.[6]

**C.      Plaintiff's Class Definitions Are Not Defective**

To begin, Defendants argue that "Plaintiff improperly seeks to certify plaintiff and defendant classes that were not alleged in the [Amended Complaint]." Dkt. No. 48 at 16. Defendants argue that certification should be denied on this improper certification alone, or that in the alternative, the Court should consider only the class definitions alleged in the Amended Complaint. *See id.* at 18.

Courts in this Circuit are split over whether a plaintiff is bound by the class definition in the complaint. *See Jammeh v. HNN Associates, LLC*, 2020 WL 5407864, at *8 (W.D. Wash. Sept. 9, 2020). Some courts in this Circuit maintain the class definitions outlined in the complaint, and if a plaintiff wants to change the definition of the proposed class, the plaintiff must first amend the complaint. *See, e.g., Crosby v. Cal. Physicians' Serv.*, 498 F. Supp. 3d 1218, 1225 n.2 (C.D. Cal. 2020). Courts in the Circuit have also allowed for a plaintiff to narrow

---

[6] Given the Court's findings, it need not reach Plaintiff's arguments regarding the juridical link doctrine. *See* Dkt. No. 41 at 21; Dkt. No. 53 at 12.

ORDER ON MOTION TO CERTIFY CLASS – 10

a proposed class at the certification stage without needing to amend the complaint. *See, e.g.*, *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015). Courts have also addressed the issue in a third way, by allowing a plaintiff to modify the proposed class if the "proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants." *Jammeh*, 2020 WL 5407864, at *9 (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590–91 (N.D. Cal. 2010)). Courts in this District have aligned themselves with the third option as "the most appropriate test because instead of setting artificial limits based on allegations that are drafted prior to class discovery or an amorphous determination that the newly described class definition is 'narrower' than the first, this test looks at the practical impacts that the new class definition will have on the opposing party and the conduct of the litigation in general." *Id.*; *see also Douglas v. Bank of Am., N.A.*, No. C20-0193, 2020 WL 6799010, at *8 (W.D. Wash. Nov. 19, 2020) (agreeing with court's finding in *Jammeh*). This Court agrees with the third option.

### 1.    Plaintiff Class

Upon comparing the class definitions in the Amended Complaint to those in Plaintiff's motion, the Court finds that Plaintiff has made marginal, inconsequential, differences to his definitions of both the Plaintiff Class and the Defendant Class. The Amended Complaint defines the Plaintiff classes as follows:

> **Longshore Class**[:] All hourly-paid non-exempt longshore, clerk, container freight station longshore/clerk utilitymen, walking boss/foreman, and similar positions ("Longshore Workers") employed on PMA member jobsites located in the State of Washington at any time during the three years preceding the filing of this Complaint and thereafter (the "class period").

> **Longshore (Seattle) Subclass**[:] All Longshore Workers employed on PMA member jobsites located within the geographic boundaries of the City of Seattle at any time during the class period.

Dkt. No. 29 ¶ 3.1. In Plaintiff's instant motion, he defines the Plaintiff Class as follows:

> All hourly-paid employees who are covered by a Collective Bargaining Agreement between ILWU and PMA and have worked on a PMA Member jobsite located in the State of Washington at any time since May 29, 2021[.]

Dkt. No. 41 at 12; *see also* Dkt. No. 47 (Praecipe to Dkt. No. 41) at 1 (correcting definition). Although the wording of the definitions is different, the changes do not materially alter the course of litigation in this case.

Defendants make no assertion that they employ non-ILWU workers at their Washington jobsites. Defendants make no assertion that any of the ILWU workers are not subject to the CBAs. The Parties all agree that the CBAs define the group of Plaintiffs in this lawsuit. *See* Dkt. No. 53 at 7–8; Dkt. No. 35 at 5; Dkt. No. 48-1 ¶ 6. In fact, this is supported throughout the declaration of William Bartelson, Defendant PMA's Vice President of Contract Administration and Arbitration. *See generally* Dkt. No. 48-1. For example, Bartelson asserts, among other things, that Dockworkers' pay is established under the CBAs (Dkt. No. 48-1 ¶ 8), including how wages are calculated (*id*. ¶ 14) and minimum payments to Dockworkers (*id*. ¶ 17); and that the CBAs determine how many jobs to order each shift (*id*. ¶ 8). The fact that Plaintiff redefines the class members to tailor it to representations made by PMA[7] does not change anything about the litigation and, if anything, clarifies the definition for Defendants. There is no difference between the two groups—they are one and the same. Therefore, the workers "employed on PMA member jobsites" (Dkt. No. 29 ¶ 3.1) are also the members of ILWU and are covered by the CBAs, making the changes minor and inconsequential.

---

[7] *See e.g.*, Defendant PMA's Answer to Interrogatory No. 1, stating "the term 'dockworker' included longshore workers and marine clerks, which are the dockworker categories covered by the ILWU-PMA Pacific Coast Longshore and Clerks' Agreement ('PCL&CA'), and walking bosses/foremen, which is the dockworker category covered by the ILWU-PMA Pacific Coast Walking Bosses and Foremen's Agreement ('PCWB&FA')." Dkt. No. 46-3 at 4.

ORDER ON MOTION TO CERTIFY CLASS – 12

Furthermore, Defendants do not assert that this change will require additional discovery, and even conceded at oral argument that they would only need to provide new discovery "if [Plaintiff] wanted to do discovery."[8] Dkt. No. 62 at 45:15–16. Defendants argue that this redefinition changes Plaintiff's theory of liability, because the word "employed" is swapped for "worked," and because "the new definition focuses on whether a worker was subject to a collective bargaining agreement and not on the existence of an employment relationship." Dkt. No. 48 at 17–18. But this change does not actually alter the class, because Plaintiff has always maintained that those who work at the jobsites (Dockworkers) are union members subject to the CBAs, that Defendants are their employers, and that Defendants are thereby liable. And as Plaintiff points out, the change avoids entanglement with a separate, larger, issue in the case of who qualifies as an "employer," which is a disputed issue in this case. Dkt. No. 53 at 8.

### 2.    Defendant Class

As for the change in the definition of the Defendant Class, Defendants take issue with Plaintiff's addition of "PMA and PMA members' subsidiaries and affiliates." *See* Dkt. No. 48 at 18. Again, Defendants do not assert that this will require additional discovery on their part. *Id*. Still, Defendants argue that this change constitutes a "major shift in legal theory." *Id*. However, Defendants do not explain how the addition of "members' subsidiaries and affiliates" changes the legal theory, and Plaintiff points out that there are companies that are inexplicably missing from Defendant PMA's discovery responses, despite the fact that the companies are on Plaintiff's paystubs. Dkt. No. 41 at 15. Also, Defendant SSA Terminals admits that its corporate

---

[8] Although Defendants assert that the standard for changing the class definition should be that a plaintiff can never be allowed to alter the complaint without seeking leave to amend the complaint, the only case Defendants cite from this District uses the same method the Court does here—an analysis of whether the modifications are minor, require no additional discovery, and cause no prejudice to defendants. *See* Dkt. No. 48 at 16 (citing *Douglas*, 2020 WL 6799010, at *8). Despite this, Defendants do not address these factors.

ORDER ON MOTION TO CERTIFY CLASS – 13

structure is "very confusing" (Dkt. No. 42-2 at 7), and Defendants should not be able to shield themselves from suit by creating confusing corporate structures. Considering that all PMA Members are subject to the CBAs and that members of the ILWU Union work at PMA Member jobsites, the "members' subsidiaries and affiliates" are already part of the lawsuit—Plaintiff simply changed the definition to include companies that should clearly be part of the lawsuit.

* * *

Accordingly, because: (1) the changes are minor; (2) Defendants do not assert this change will require additional discovery; and (3) the change will not prejudice Defendants, the Court will allow modification of the proposed class. *See Jammeh*, 2020 WL 5407864, at *9.

**D.    Rule 23(a) Criteria for Plaintiff Class and Defendant Class**

To certify a class, a moving party must show: (1) the class is so numerous that joinder is impracticable; (2) there are common questions of law or fact to the class; (3) the claims or defenses of representative parties are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the absent class members. Fed. R. Civ. P. 23(a). These requirements are referred to as numerosity, commonality, typicality, and adequacy. *See Dukes*, 564 U.S. at 349.

**1.    Numerosity**

Numerosity is satisfied if "the class is so large that joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)), *overruled on other grounds by Dukes*, 564 U.S. 338. However, "impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). "The numerosity requirement requires the examination of the specific facts of each case, though 'in general, courts find the numerosity requirement satisfied when a class

ORDER ON MOTION TO CERTIFY CLASS – 14

includes at least 40 members.'" *Wagafe v. Trump*, No. C17-94, 2017 WL 2671254, at *12 (W.D. Wash. June 21, 2017) (quoting *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)). However, the Supreme Court has found that there is no "absolute limitation[]" on the numerosity requirement. *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *In re Zillow Grp., Inc. Secs. Litig.*, No. C17-1387, 2020 WL 6318692, at *3 (W.D. Wash. Oct. 28, 2020) (quoting *In re Abbott Lab'ys Norvir Anti-Trust Litig.*, Nos. C04-1511, C04-4203, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007)).

### a.      Plaintiff Class

In the instant matter, Defendants do not contest that the Plaintiff class meets the numerosity requirement. Although the Court does not know the exact number of Plaintiffs, "PMA's Annual Report confirms that, in a single year, over 2,000 Dockworkers were dispatched to jobs in Washington ports." Dkt. No. 41 at 15 (citing Dkt. No. 42-3 (PMA Annual Rep.) at 67) (footnote omitted). Considering that this number comes directly from PMA's annual report, and that PMA does not contest that Plaintiff meets the numerosity prerequisite, common sense indicates that Plaintiff has made a sufficient showing here.

Therefore, the numerosity prerequisite is satisfied.

### b.      Defendant Class

According to Plaintiff, the Defendant class consists of 23 entities (22 members (or member subsidiaries or affiliates) plus Defendant PMA). Dkt. No. 41 at 16; *see also* Dkt. No. 70 (Plaintiff Reply re: Supplemental Declaration Briefing) at 2. Defendants dispute this number and assert that the class is either 17 or 19, although they do not specify which. *See* Dkt. No. 48 at 22. In a discovery response, Defendant PMA identified 19 employers in Washington, two of which they assert are not PMA members but still employ Washington Dockworkers. *See* Dkt. No. 42-8

ORDER ON MOTION TO CERTIFY CLASS – 15

(PMA Resp. to Discovery) at 13–14; *see also* Dkt. No. 48 at 22–23. After receiving Defendant PMA's discovery response, Plaintiff identified two companies that are identified in Plaintiff's pay records but are missing from the discovery response. Dkt. No. 42 ¶ 9. In Defendants' response brief, they do not dispute that those two additional companies are reflected in Plaintiff's pay records yet not listed in the discovery response. Dkt. No. 48 at 22–23. Instead, Defendants argue that Plaintiff should have moved to compel for additional information. *Id*. at 23. Then, Plaintiff provided the Court with Plaintiff's May 15, 2026, paystub, which included a new PMA Member he had not previously worked for, Metro Cruise Services, LLC. Dkt. No. 63-1. Defendants do not dispute that Plaintiff worked for this employer, instead arguing that one extra PMA Member does not meet the numerosity prerequisite. *See* Dkt. No. 66 at 3. The Court finds it has sufficient evidence to determine that the class comprises at least 23 members—the 19 Defendants sent Plaintiff during discovery, the two additional companies that Plaintiff also worked for, the company Plaintiff worked for in May 2026, and Defendant PMA.

The next question for the Court is whether a class of 23 members satisfies the numerosity prerequisite. Defendant classes typically contain fewer class members than plaintiff classes, and the defendant class members tend to be less widely dispersed and more readily identifiable. *See* William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 5.5 (6th ed. 2025). Although 23 is close to what is generally considered too small, *see Gen. Tel. Co. of the Nw*., 446 U.S. at 330 (finding that a class of 15 would be too small), Plaintiff claims that a class size in the twenties (23, to be precise) is enough for certification (Dkt. No. 41 at 16 (citing *Abt v. Mazda Am. Credit*, No. C98-2931, 1999 WL 350738, at *4 (N.D. Ill. May 19, 1999) (reasoning that a defendant class of 25 car dealerships was sufficient in light of the uniform lease agreement at issue))). Guidance on defendant classes of this size is few and far between, but the Ninth Circuit has stated that "the presence of other indicia of impracticability [of joinder] persuade us that the

[numerosity] requirement has been met. *A.B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 836 (9th Cir. 2022) (quoting *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (quotation marks omitted)). Given the presence of other indicia of impracticability, the Court finds that 23 members satisfies the numerosity prerequisite.

Plaintiff provides several examples that demonstrate why joinder would be difficult, including: (1) SSA Terminals' testimony about its corporate structure being "very confusing"[9] (Dkt. No. 42-2 at 7); (2) Defendant PMA's prior admission that "Defendant Class is comprised of at least 20" employers in Washington (Dkt. No. 20 (Praecipe to Answer to Complaint ¶ 4.3), notwithstanding its present assertion that the number is 17 or 19 (Dkt. No. 48 at 22); and (3) the undisputed discrepancy between Plaintiff's pay records and the list Defendants sent in discovery (Dkt. No. 42 ¶ 9). Defendant argues that "where, as here, 'a defendant class is small, identifiable, and not geographically dispersed, the impracticability test may not be satisfied as class members can easily be served individually.'" Dkt. No. 48 at 22 (citing Newberg and Rubenstein § 5.8). The problem with Defendant's argument, however, is that, as explained above, there are significant documented issues with the identification of Defendant class members. The very confusion that Defendant SSA itself concedes shows that impracticability is too great a concern for the Court to not grant Plaintiff's request for the proposed Defendant class. *See Zessar v. Helander*, No. C05-1917, 2006 WL 573889, at *3 (N.D. Ill. Mar. 7, 2006) (impracticability of joinder takes into account more than just the size of the class, but includes the "ease of identifying members").

---

[9] Plaintiff elaborates on this confusion by asserting, "Roughly nine months into the litigation, defense counsel insisted that SSA Marine (a PMA Member) was improperly named in the lawsuit, despite [*sic*] that it wholly owns SSA Conventional and wholly owns the parent company of one of SSA Terminals' member companies. Several months later, PMA disclosed that SSA Terminals is a PMA Member, but SSA Conventional is not—at least not on paper." Dkt. No. 41 at 16 (citing Dkt. No. 27 ¶ 2; Dkt. No. 6 (Defendant SSA Terminal Discovery Response); Dkt. No. 7 (Defendant SSA Conventional Discovery Response)).

As a final matter, Defendants raise the issue of potential opt-outs from Defendant class members. Dkt. No. 48 at 23. But that issue is simply one of potential. Some Defendants may opt out. However, Defendants also may not want to bear the risk and costs of litigating a class action alone, especially given the joint agreement to operate the PMA and common practices amongst all the members. The Court will not deny Plaintiff's motion based on speculative future opt-outs. This issue is more properly addressed on a motion to decertify the class should Defendants' assumption turns out to be correct.

Therefore, the numerosity prerequisite is met.

### 2.    Commonality

To meet the commonality prerequisite, a party must demonstrate that "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). The proposed class's claims, "must depend upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. (internal citation omitted). The commonality prerequisite is "construed permissively." *Hanlon*, 150 F.3d at 1019. Therefore, "[a]ll questions of fact and law need not be common to satisfy the rule." *Id.*; *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) ("Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." (quoting *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008)). Rather, the "standard is 'readily met'

ORDER ON MOTION TO CERTIFY CLASS – 18

where plaintiffs seek prospective relief 'challeng[ing] a system-wide practice or policy that affects all of the putative class members.'" *Mansor v. U.S. Citizenship & Immigr. Servs.*, 345 F.R.D. 193, 204 (W.D. Wash. 2023) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)).

### a.   Plaintiff Class

Defendants do not contest whether the Plaintiff class meets the commonality prerequisite of Rule 23(a)(2). *See generally* Dkt. No. 48 at 24–31. And in this case, Plaintiff outlines several questions of law common to all Plaintiffs (*see* Dkt. No. 41 at 18), including, *inter alia*: whether Dockworkers are employees under RCW 49.46.010(3); whether PMA is a direct or indirect "employer" of Dockworkers under RCW 49.46.010(4); whether Defendants provided Dockworkers written communication each month, on paystubs or otherwise, detailing the amount of sick leave accrued and the balance available for use; and whether failure to provide paid sick leave accruals to Dockworkers is a wage violation under Washington law. Dkt. No. 41 at 18. Given the structure put in place by PMA and the PMA members, *see supra* Section I.B., all of these questions generate common answers for all Plaintiffs that will be apt to drive the resolution of the litigation. Moreover, all Plaintiffs will challenge the Defendants' system-wide practice of not providing paid sick leave.

Therefore, the commonality prerequisite is met.

### b.   Defendant Class

Defendants also do not argue that the proposed Defendant class does not meet the commonality prerequisite. *See* Dkt. No. 48 at 18–24. Plaintiff argues that the common questions relevant for the Plaintiff class are also relevant for the Defendant class. Dkt. No. 41 at 18–19. The Court agrees. The allegedly system-wide practice of not providing paid sick leave is one that all Defendant class members exhibit. The answers to questions regarding the system-wide

practice will generate common answers for all Defendants that will be apt to drive the ultimate resolution of this litigation.

Therefore, the commonality prerequisite is met.

### 3. Typicality

Under Rule 23(a)(3), the moving party must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The inquiry for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). While typicality is a "permissive standard[]," *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1020), class certification is inappropriate "if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Hanon*, 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)). Additionally, the "commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

//

//

### a.    Plaintiff Class

Defendants do not contest whether the Plaintiff class meets the typicality prerequisite under Rule 23(a)(3). *See generally* Dkt. No. 48 at 24–31. However, at oral argument, Defendants asserted that without standing, Plaintiff could not meet the typicality requirement. The Court has already addressed the issue of standing and has found that Plaintiff does have standing, *see supra* section III.A., which dispenses with Defendants' only argument against Plaintiff's meeting the typicality prerequisite for the Plaintiff class.

In addition, Plaintiff makes a showing that his claims are typical of those of the other class members. Plaintiff asserts that the claims he brings are "identical to those he brings on behalf of the other Dockworkers." Dkt. No. 41 at 19–20. Plaintiff establishes that his claims are not unique to him because, "[l]ike his fellow Dockworkers, his terms and conditions are covered by a uniform labor agreement, negotiated between his union and PMA." *Id*. Given that all Plaintiff class members are Dockworkers who allegedly did not receive paid sick leave that Plaintiff claims they were owed, all members will have interrelated interests that will be fairly and adequately protected in their absence.

Therefore, the typicality prerequisite is met.

### b.    Defendant Class

Defendants' argument against the proposed Defendant class's meeting the typicality prerequisite is that "the defenses of PMA, the SSA Defendants, and putative defendant class members will all differ depending on individual circumstances." Dkt. No. 48 at 23. But as Plaintiff points out, all PMA Members will raise the same defense—that they are each only liable for paid sick leave accrued by Dockworkers on their job sites. Dkt. No. 53 at 13.  That is, irrespective of the defendant class members' "individual circumstances," they will all raise the exact same defense. The only differences among the defendant class members will be the amount

of damages that each class member might owe in the end, but "the amount of damages is invariably an individual question and does not defeat class action treatment." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

Defendants also argue that Defendant PMA's defense is unique from the remaining Defendants, because Defendant PMA will argue it did not employ any plaintiff class members. Dkt. No. 48 at 24. But owing to the structure of Defendant PMA, this does not impair Defendant PMA's ability to represent the interests of the other Defendants. After all, Defendant PMA's board of directors is a group of executives from PMA Members, and these board members maintain significant power over Defendant PMA, including: the power to appoint and remove all officers, agents, and employees of the corporation; the power to conduct, manage, and control the affairs and business and employees of the corporation; and the power to approve and admit to membership persons, firms, associations and corporations. Dkt. No. 42-4 at 6. Moreover, the PMA board decides how much to charge the PMA Members in assessments, which are used to pay the salaries of Defendant PMA staff. Defendant PMA and its members are intricately intertwined and work together for their "mutual benefit." See Dkt. No. 42-14 (Washington Secretary of State Corporation PMA Annual Report) at 2. Surely this close-knit relationship creates an alignment of interests, which is crucial to the typicality inquiry. *See Hanon*, 976 F.2d at 508 (noting that a court's central inquiry on typicality is to ensure alignment of interests).

Therefore, the typicality prerequisite is met.

### 4.    Adequate Representation

The final requirement of Rule 23(a) is adequacy. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement has two components: (1) whether any conflicts of interests

exist between plaintiffs and their counsel and other class members; and (2) whether plaintiffs and their counsel will vigorously prosecute the action on behalf of the class members. *Hanlon*, 150 F.3d at 1020.

### a.    Plaintiff Class

Defendants argue that "Plaintiff's lack of standing also makes him an inadequate class representative under Rule 23(a)(4)." Dkt. No. 48 at 19. The Court has found that Plaintiff has standing, *see supra* section III.B., therefore, this argument has no merit. Moreover, Plaintiff satisfies the adequacy prerequisite. Plaintiff has been employed in the longshore industry for over 20 years. Dkt. No. 43 ¶ 1. Further, Plaintiff asserts that he "understand[s] [his] duties as the class representative are to represent the best interests of the class," and that he is "proud to serve in this role and [is] prepared to meet [his] obligations." *Id.* ¶ 4. There is no record of a conflict of interest between Plaintiff and his counsel. Finally, Plaintiff's counsel has substantial experience representing classes of workers and consumers, indicating she will vigorously prosecute this case. Dkt. No. 42 ¶¶ 18–23. Therefore, the adequacy prerequisite is met.

### b.    Defendant Class

Defendants make their arguments for typicality and adequacy in the same section. *See* Dkt. No. 48 at 23–24. Given Defendants' stance, the Court incorporates its analysis from section III.D.3.b herein, to explain how Defendants will offer a vigorous defense on behalf of class members. Further, the Court finds that there is no suggestion of a conflict of interest between the proposed Defendant class, as Defendant PMA and the SSA Defendants are currently represented by the same counsel. Surely, if Defendants believed there was a conflict, they would not have retained the same counsel.

//

//

**E.    Criteria for Rule 23(b)—Predominance and Superiority**

In addition to satisfying all prerequisites of Rule 23(a), Plaintiff must also satisfy one of three alternative prerequisites in Rule 23(b). *See* Fed. R. Civ. P. 23(b). Plaintiff argues that he satisfies the third (*see* Dkt. No. 41 at 22)—that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3). The "matters pertinent" to Rule 23(b)(3) findings include a "nonexhaustive list," *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615–16 (1997), of the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Defendants neither make any explicit reference to the "matters pertinent" outlined in 23(b)(3)(A)–(D), nor do they provide any additional analysis directly referencing any of these factors. However, the Court finds that "matters pertinent" to a Rule 23(b)(3) weigh in favor of Plaintiff. Namely, under 23(b)(3)(A), the Court is persuaded by Plaintiff's argument that "the claims at issue are wage-related claims of thousands of individual workers who are unlikely to have the sort of emotional stake in the litigation, as they would in a mass tort or personal injury suit." Dkt. No. 41 at 27 (citing *Amchem*, 521 U.S. at 617). As referenced in *Amchem*, class actions solve the problem of individual plaintiffs' disincentivization to bring suit due to potential small recoveries "by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru*

ORDER ON MOTION TO CERTIFY CLASS – 24

*Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). Here, Defendants do not assert that other potential plaintiffs prefer to pursue separate claims. Moreover, neither party presents any information regarding any other litigation concerning the controversy already begun by or against class members, the factor referenced in 23(b)(3)(B). Further under 23(b)(3)(C), a class action is undoubtedly superior to other available methods for fairly and efficiently adjudicating the controversy—such as lawsuits brought by many other Dockworkers—as it centralizes the dispute while avoiding any potential inconsistent applications of the law.

What Defendants argue is that a class trial would be unmanageable (Dkt. No. 48 at 29)—a claim that appears to be an indirect reference to Rule 23(b)(3)(D), which considers "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). Defendants assert that Plaintiff cannot certify the proposed damages class because "individualized issues predominate." Dkt. No. 48 at 24. Defendant offers several sub-arguments on this topic, which the Court will address in turn.

First, Defendants argue that individualized issues predominate because the Court would need to apply a 10-factor test for each individual class member to determine whether they are Washington-based and, consequently, whether Washington's paid sick leave law applies to them. Dkt. No. 48 at 25. Defendants assert that "[g]iven the transient, interchangeable nature of dockworker employment, establishing whether a worker is 'Washington-based' is not straightforward." *Id*. This argument is unavailing. Defendants' own records provide the answer as to whether a worker is Washington-based, because a Dockworker's hours are logged and taxed by location. *See* Dkt. No. 42-3 at 67; Dkt. No. 42-11 (Fowler Pay Stub) at 2 (indicating that Plaintiff was taxed for Washington-specific benefits, such as Long Term Care and Paid Family Leave). Therefore, questions of individual Dockworkers' work locations can be easily solved with reference to Defendants' own records, meaning there would be no need for the 10-

part test. These records are a form of class-wide proof, as they all provide information on individual Dockworkers' work hours. When such information is easily verifiable in light of Defendants' own records and the given the in-person nature of the work, questions about individual class members' work locations do not predominate over the class-wide questions raised by Plaintiff.

Next, Defendants argue that individualized issues predominate because the Court would need to apply a 13-factor test for each individual class member to determine whether they are considered an employee of Defendants. *See* Dkt. No. 48 at 25–26. But this assertion overlooks the fact that there is no dispute that PMA Members are considered to be employers of Dockworkers, leaving no need for a 13-factor test. This conclusion is exemplified through the fact that Defendants argued in their response brief that, if the case were to go to trial, Defendant PMA would be the only Defendant who would be able to argue that they are *not* an employer of Dockworkers—which is to say that the remaining Defendants *are* employers of Dockworkers. (*see* Dkt. No. 48 at 24). As for Defendant PMA, the question of whether they are considered an employer is not an individual one for each Dockworker—if Defendant PMA is considered an employer for one Dockworker, it will be considered an employer for all Dockworkers. This is because the functions that Defendant PMA performs (e.g., payroll, human resources, training, etc.) on behalf of all PMA members do not vary by Dockworker. *See* Dkt. No. 42-2 at 13. And these functions Defendant PMA performs on behalf of its members for Dockworkers are prescribed by contract, meaning each Dockworker receives a uniform slate of services from Defendant PMA. Dkt. No. 53 at 16. Therefore, there will be no need to conduct a 13-factor test to determine employment for any of the individual Plaintiffs.

Defendants also argue that whether Dockworkers were eligible for paid sick leave depends on whether each individual Dockworker satisfied the statute's preconditions. Dkt.

No. 48 at 26–27. RCW 49.46.210(1)(a) requires that "[a]n employee shall accrue at least one hour of paid sick leave for every forty hours worked as an employee." Plaintiff asserts that Defendants committed a wage violation, because he was never provided paid sick leave to begin with, not that Defendants committed a wage violation because Plaintiff was offered paid sick leave, requested to take it, and was denied.[10] Defendants' arguments rest on the *use* of sick leave, not the *provision* of sick leave. *See* Dkt. No 48 at 27 (citing guidance on "**Are employees entitled to use paid sick leave during time periods when the employee is not required to work?**"). The former is not at issue in this case; the latter is. That is, the question of whether an individual was *allowed to use* paid sick leave is separate from the question of whether an individual is *owed* paid sick leave. And the question of whether an individual was eligible to use paid sick leave would come up in the context of damages, in order to calculate how much a Dockworker was owed for the alleged wage violation. Further, "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."[11] *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Therefore, Defendants' arguments regarding individual Plaintiffs' eligibility to use paid sick leave miss the theory of Plaintiff's claim and do not prevent class certification.

Additionally, Defendants argue that because the other benefits they provide Dockworkers can satisfy the paid sick leave requirement, this would require an individualized inquiry for different plaintiffs. Dkt. No. 48 at 29. Defendants cite to the Washington Administrative Code ("WAC") and assert that an employer's paid time off ("PTO") program may satisfy the paid sick

---

[10] In any event, any assertion that a Dockworker would need to show that they would have qualified for and used paid sick leave is nonsensical, because this was a benefit that Defendants concede was never offered. *See James v. Uber Techs. Inc.*, 338 F.R.D. 123 (N. D. Cal. 2021) (rejecting as "nonsensical" the notion employees have to show they have requested a leave benefit that was never offered).

[11] As outlined in section III.E., the Court rejects all of Defendants' other arguments. Therefore, the presence of questions regarding individualized damages alone cannot defeat class certification.

leave requirement. *See id*. Further, they argue that if a plaintiff or class member claimed sick pay on a day they used another type of benefit, such as Holiday Pay or other benefits, then that would offset any right to sick pay, "further underscoring the individualized nature of Plaintiff's sick pay claims." *Id*. Defendants' arguments are unavailing for several reasons. First, the "other benefits" defense that Defendants reference here applies to all Dockworkers, not just individual ones. In other words, an argument that Dockworker's use of one of the benefits that they receive from Defendants offsets any need for paid sick leave is a defense that can be used against any Dockworker.[12] Therefore, the "other benefits" defense supports certification.

Finally, Defendants also assert that the lack of a damages model defeats predominance and superiority. *See id.* at 29–30. Defendants argue that Plaintiff does not provide a method for calculating damages. But when considering damages in the context of predominance, the Court must determine whether the moving party is "able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva*, 716 F. 3d at 514. And here, Plaintiff asserts that any damages owed to the Plaintiff class stemmed from all Defendants' failure to provide paid sick leave. Any questions about how much an individual plaintiff might be owed is a separate analysis, specific to damages, which, by itself, cannot defeat class certification under Rule 23(b)(3). *See id*.

**F.    Rule 23(b)(2)—Injunctive Relief**

Plaintiff seeks to certify his claim for injunctive relief on behalf of the Dockworker class, as to Defendant PMA only. Dkt. No. 41 at 28–29. Rule 23(b)(2) permits certification where "the

---

[12] As an aside, Defendants' citation to the WAC is misleading. Although WAC 296-128-700 provides that an employer's PTO program may satisfy the requirement to provide paid sick leave, it also specifically does so in reference to PTO programs that "combines more than one type of leave, including all paid sick leave, into one bank of leave[.]" WAC 296-128-700(1). Here, Defendants do not argue that their leave package *includes* paid sick leave. Instead, they argue that on account of the benefits package that they already provide, they need not *also* give paid sick leave. Moreover, Washington law provides that agreements that fail to provide paid sick leave are "no defense" to such an action. RCW 49.46.090(1).

party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). "The key to the [Rule 23](b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360. "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* "The key to the Rule 23(b)(2) analysis is whether an injunctive remedy (and, if applicable, any incidental damage award) would apply to the class as a whole without having to make individual determinations as to each class member's eligibility." *Garner v. Amazon*, No. C21-750, 2025 WL 1911088, at *5 (W.D. Wash. July 7, 2025) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011).

The injunctive remedy sought undoubtedly applies to the entirety of the proposed Plaintiff class. Defendant PMA processes Dockworkers' payroll, creates and issues paychecks, performs HR-related services, administers benefits, and carries out the CBA, which covers all Dockworkers. *See* Dkt. No. 42-2 at 13. Defendant PMA allegedly has refused to include paid sick leave as a benefit it administers, and this lack of sick leave applies generally to the proposed Plaintiff class, because none of the Dockworkers received paid sick leave. The Court has already dismissed Defendants' arguments about standing and individualized calculations and again does so here, for the same reasons. Therefore, the Court finds that a Rule 23(b)(2) class may be certified for the purpose of seeking injunctive relief against Defendant PMA.

//

//

//

ORDER ON MOTION TO CERTIFY CLASS – 29

## IV.    CONCLUSION

Accordingly, Plaintiff's Motion to Certify Class (Dkt. No. 41) is GRANTED.


Dated this 24th day of June, 2026.

Tana Lin
United States District Judge